UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Case No.: 25-2544

TOP OFFICE PROS BUSINESS SERVICES, INC.

    Plaintiff,

v.

JPMORGAN CHASE BANK, N.A.

    Defendant.

## COMPLAINT

Plaintiff Top Office Pros Business Services, Inc. ("**TOP**") files this complaint against Defendant JPMorgan Chase Bank, N.A ("**Chase**") seeking declaratory judgment, general, special and punitive damages, and an injunction.

### Parties, Jurisdiction, and Venue

1. Plaintiff TOP is a Florida corporation with its principal place of business located at 1111 Kane Concourse, Suite 518, Bay Harbor Islands, FL 33154. TOP also conducts business under the d/b/a Office Wagon. TOP is a citizen of Florida because it is incorporated and has its principal place of business in Florida.

2. Chase is a corporation chartered in Ohio with its principal place of business in New York. Chase is a citizen of New York because its principal place of business is in New York.

3. The Court has subject matter jurisdiction under 28 U.S.C. §1332 because Chase is a New York citizen, TOP is a foreign citizen, and the amount in controversy exceeds $75,000.00, exclusive of interest, attorneys' fees, and costs.

4. Venue is proper in the Southern District of New York because a substantial part of the events or omissions giving rise to TOP's claims occurred in this district.

## General Allegations

A.  **TOP contracted with SLAC and Delta Star, Inc.**

5. TOP is engaged in the business of procuring and selling office and electrical equipment.

6. TOP's president is Jacob Gitman, a citizen of Florida.

7. TOP is also associated with Sinai Holdings, LLC, a Florida limited liability company that serves as one of TOP's corporate officers.

8. On or around December 17, 2024, TOP entered into an agreement with SLAC National Accelerator Laboratory (the "**TOP-SLAC Contract**"). A redacted copy of the TOP-SLAC Contract is attached as **Exhibit 1**.

9. SLAC is a U.S. Department of Energy ("**DOE**") national lab managed and operated by Standford University in Menlo Park, California.

10. SLAC's budget and research is funded by the federal government through DOE.

11. Under the TOP-SLAC Contract, SLAC agreed to purchase approximately $11,630,576.00 in electrical equipment from TOP, including two master substation high voltage transformers.

12. The first stage of the contract calls for TOP to deliver one transformer by July 2027.

13. Upon delivery and installation of the first transformer, SLAC agreed to pay TOP approximately $5,785,288.00.

14. TOP proceeded to elicit bids from manufacturers for the first transformer ordered by SLAC, including from manufacturer Delta Star, Inc.

15. Delta Star is a company located in Virginia specializing in the manufacture of power substations.

16. TOP ultimately selected Delta Star to manufacture the transformer according to the

specifications under the TOP-SLAC Contract.

17. On or around March 11, 2025, Delta Star issued two invoices to TOP, one for $4,890,365.00 for the complete order, under which Delta Star issued a second invoice for $1,388,205.90 to be remitted immediately by TOP to facilitate the manufacturing of the transformer. Copies of the invoices are attached as composite **Exhibit 2**.

18. On or around March 11, 2025, TOP initiated a wire from its Citibank account for $1,388,205.90 to Delta Star. A copy of the outgoing wire confirmation issued from Citibank to TOP for the wire is attached as **Exhibit 3**.

19. Delta Star maintains its bank accounts with Chase.

20. The account to which Delta directed TOP to send the wire is an account at Chase's branch located in New York, New York.

21. Chase refused to process the wire from TOP.

22. In connection with its refusal, Chase explained that the wire from TOP was rejected because of "SANCTIONS AND/OR//INTERNAJPMC [sic] POLICY." A copy of the rejection notice sent to Citibank is attached as **Exhibit 4**.

23. As a result of Chase's rejection, TOP could not make payment on the Delta Star invoice.

**B.  Chase has previously defamed and tortiously interfered with contracts held by other companies associated with Jacob Gitman.**

24. Based on information TOP and its counsel discovered during other litigation previously held in *Monarch Air Group, LLC et al v. JPMorgan Chase Bank, N.A.*, case number 21-cv-62429-WPD (S.D. Fla.) (the "**Monarch Case**") and in litigation currently pending in *Sinai Holdings, LLC et al. v. JPMorgan Chase Bank, N.A.*, case number 23-cv-62159-WPD (S.D. Fla.) (the "**Sinai Case**"), Chase's reasons for rejecting wires from TOP is based on its decision in or

3

around 2019–2020 to interdict Jacob Gitman, his son David Gitman, and companies associated with them.

25. Chase's decision to interdict Jacob Gitman and his companies was based on its wholly unsubstantiated and false conclusions that Mr. Gitman and his companies were associated with Russian organized crime and participated in funding interference in the 2016 U.S. presidential election.

26. Chase's investigation into Jacob Gitman was limited to its review of a blog post authored by Patrick Simpson styled "Under Trump, Witness Protection has been infiltrated by the Russian Mafia" that falsely accused Mr. Gitman as having ongoing associations with convicted Russian criminals Vadim Trincher and Anatoly Golubchik who once owned a condominium in Trump Tower in New York.

27. Based on Mr. Gitman's one-time association with Golubchik many years prior, the blog post claimed that Mr. Gitman was a member of the Russian mafia and that judges in multiple states had made such a finding.

28. It went on to claim that a contract between Monarch Air Group, LLC (a company that Mr. Gitman had previously been associated with) and the U.S. government to handle flights for the witness protection program had been infiltrated by the Russian mafia because of these connections.

29. The blog post was published in March 2019, and it came to Chase's attention later that year.

30. Chase also received a congressional subpoena from Congresswoman Maxine Waters that directed Chase to investigate an entity listed as "Monarch" for potential interference

in the 2016 presidential election.[1]

31. Chase concluded that Ms. Waters' generic reference was to Monarch Air Group, LLC.

32. Based on the blog post's claims and Ms. Waters' missives, Chase concluded that Mr. Gitman and all companies associated with him were engaged in money-laundering and had potentially interfered in the 2016 U.S. presidential election.

33. From that point forward, Mr. Gitman and any entities associated with him were interdicted by Chase and transactions to or from them were rejected.

34. In connection with the rejection of any wires to or from Mr. Gitman or any of his companies, Chase issues a rejection notice to the parties to the transaction explaining that the wire was cancelled because Mr. Gitman and his companies were subject to OFAC investigations, as well as sanctions and/or internal JPMC policy.

35. This notice is generated as a matter of policy at Chase knowing it is false; in fact, it is only issued when the reason for Chase's actions are not sanctions related, but stem from internal compliance.

36. Specifically, Chase's anti-money laundering policy dictates that transactions to or from any person interdicted and placed on its AML[2] interdiction list must be cancelled, and the parties to the transaction must be informed that the transaction was rejected "due to Sanctions and/or internal JPMC policy." Chase frequently includes in the rejection message's subject line that the interdicted individual is subject to "OFAC investigation."

---

[1] After sending out this subpoena, Congresswoman Waters used Monarch Air Group, LLC's services more than once to fly to hurricane-torn, third world countries, thus confirming that she had no concerns about Monarch's practices.

[2] AML is an acronym for anti-money laundering.

37. OFAC sanctions are imposed by the U.S. government through the treasury department on "individuals and entities engaging in harmful activity, such as terrorists, international narcotics traffickers, weapons of mass destruction proliferators, and other malign actors, in response to threats to the national security, foreign policy, or economy of the United States." https://ofac.treasury.gov/faqs/topic/1501.

38. Mr. Gitman is not and never has been subject to sanctions of any kind, let alone OFAC sanctions.

39. Mr. Gitman is not and never has been subject to any investigation for OFAC violations.

40. Chase's communiques have severely harmed Mr. Gitman and companies associated with him because the recipients of the rejection notices from Chase are led to believe that Mr. Gitman is an international criminal.

41. Chase's actions have come to a head in its most recent decision to cancel TOP's wire to Delta Star.

42. Due to Chase's cancellation of the wire, TOP has no other practicable way to make payment to Delta Star because any payments issued from TOP will be rejected by Chase.

43. The payment to Delta Star must be made by March 31, 2025.

44. Delta Star has advised TOP that it has already stopped work as a result of Chase's misconduct and that it will not manufacture the transformers if TOP does not remit payment by March 31, 2025.

45. TOP is also at risk of losing the TOP-SLAC Contract if it loses its manufacturing source for the transformers.

46. If TOP cannot process its wire to Delta Star, it will lose its contract with Delta Star

and with SLAC, resulting in damages of approximately $5,785,288.00 for the first stage of the TOP-SLAC Contract.

47. Furthermore, because TOP is positioned as SLAC's incumbent provider of transformers, it has an advantage in future bids for SLAC projects which are currently being discussed and expected by the parties to be in excess of $25 million.

48. If TOP cannot perform under the TOP-SLAC Contract, TOP will lose not only the TOP-SLAC Contract but any ability to bid on and secure future SLAC projects and other business expectations and relationships.

## Count 1 – Declaratory Judgment

49. TOP realleges all paragraphs that precede count 1 as if fully restated.

50. TOP seeks a declaration under 28 U.S.C. § 2201 declaring their rights regarding Chase's past statements and Chase's claimed right to continue making defamatory statements about TOP.

51. TOP is in doubt about its rights because it believes that Chase was and is not entitled to tell TOP's business associates, lenders, or other banks that transactions to TOP could not be completed because of "sanctions," while Chase contends that it was and is permitted to make those misstatements and false claims indefinitely into the future.

52. TOP contends that Chase's sanctions statements were always an abuse of any qualified privilege that Chase may claim. This is especially so for future statements because the Monarch Case, Sinai Case, and other litigation has plainly alerted Chase that it is needlessly defaming TOP and others on its AML interdiction list.

53. Chase has continued to assert that its statements are privileged notwithstanding its knowledge that every time that it says that transactions to and from TOP are cancelled because of "sanctions" those statements are false.

**WHEREFORE**, TOP respectfully demands judgment declaring that (1) Chase's sanctions statements were false and defamatory and that Chase abused any privilege to make the sanctions statements, (2) any future sanctions statements are false, defamatory, and an abuse of any qualified privilege, (3) advising TOP's customers, vendors, lenders, financial institutions, and other business associates that Chase cannot complete transactions to or from TOP because of "sanctions" tortiously interferes with TOP's business relationships, and (4) declaring that Chase publishes these false statements about OFAC investigations and sanctions not as a result of any evidence or even suspicion, but because Chase's policies dictate that it always publishes this false information about sanctions each time an interdicted transaction is cancelled for non-sanctions/internal compliance reasons. The Court should further award supplemental relief under 28 U.S.C. § 2202 requiring Chase to tell every person or entity to whom it told that it could not complete a transaction to or from TOP because of "sanctions" that "neither TOP, Jacob Gitman, nor any company associated with Jacob Gitman are subject to any sanctions, including OFAC sanctions or investigations, and that Chase only published the sanctions statements because its policy was made to always publish these false statements," and such other relief that the Court deems just and proper.

### Count 2 – Tortious Interference with Business Relationship

54. TOP realleges all paragraphs that precede count 1 as if fully restated.

55. TOP has and had advantageous business relationships with customers, suppliers, lenders, banks and other business associates who would have transferred or have attempted to transfer funds to or from TOP's accounts or who opened and maintained a bank account for TOP.

56. Two of TOP's contracts were the TOP-SLAC Contract and TOP's agreement with Delta Star.

57. Chase had knowledge of TOP's advantageous business relationships including the

8

SLAC-TOP business relationship based on Chase functioning as the originating bank for funds transfers, the intermediary bank for funds transfers, the receiving bank for funds transfers, or otherwise acting in connection with opening up or maintaining a bank account for TOP.

58. Chase knew of TOP's advantageous business relationship with Delta Star from TOP's transfer of funds to Delta Star's account.

59. Chase intentionally and unjustifiably interfered with TOP's advantageous business relationships by debanking and then unreasonably interdicting TOP, cancelling all transactions involving TOP, and by falsely telling TOP's customers, business associates, lenders, and banks that it cancelled their business transactions with TOP "due to Sanctions" regarding an "OFAC investigation."

60. As a direct and proximate cause of Chase's intentional interference and the ensuing breaches, terminations, diminishments, and discontinuations of TOP's business relationships, TOP has suffered substantial damages. Among other things, TOP is required to devise other means to complete even the most basic business transactions whenever Chase may in any way be involved in a transaction to or from TOP.

61. Chase specifically interfered with the TOP-SLAC Contract by rejecting TOP's wire to Delta Star and falsely stating that TOP was subject to sanctions.

**WHEREFORE**, TOP respectfully demands judgment against Chase for temporary and permanent injunctive relief and damages, including ordering Chase to (1) not include the word "OFAC" in the subject line or body in all future messages related to TOP, (2) not include the word "sanctions" in all future messages related to TOP, (3) comply with a sender's instructions in any payment order accepted by Chase directing Chase to make payment to TOP, and (4) make deposits into Chase customer accounts when Chase receives a payment order from another bank to Chase

directing Chase to make a deposit into a customer's account from TOP, and any other and further relief as this Court deems just and proper.

### **Count 3 - Defamation (Libel)**

62. TOP realleges all paragraphs that precede count 1 as if fully restated.

63. Chase has made false statements about TOP to third parties, including, without limitation, saying that it could not complete transactions to or from TOP "due to sanctions" and referencing a nonexistent "OFAC investigation."

64. Chase knew the defamatory statements were false when it made them because Chase confirmed that TOP was not subject to sanctions or on any OFAC investigation before or after making those false and defamatory statements to TOP's customers, business associates, lenders, and banks and because Chase intentionally set up its communications department to communicate that the transactions are cancelled "due to sanctions" and an "OFAC investigation" when that is never the case.

65. Chase's false statements are defamatory *per se*, have significantly interfered with TOP's proper exercise of its lawful business, and have caused substantial harm to TOP's relationships with its customers, business associates, lender, and banks. The false statements also tend to injure TOP in its trade and profession and accuse TOP of the worst crimes.

66. As a direct and proximate result of Chase's defamatory statements, TOP has suffered substantial damage, including its inability to complete its wire to Delta Star which has put TOP at risk of losing its contract with Delta Star and the TOP-SLAC Contract.

67. Chase's misconduct, as described herein, was willful, wanton, and malicious. If such misconduct were permitted without rebuke it would encourage others to engage in such willful misconduct.

**WHEREFORE**, TOP respectfully demands judgment against Chase for (1) special and general damages, (2) punitive damages, (3) court costs, (4) pre- and post-judgment interest, and (5) any other relief that the Court deems just and proper.

### Count 4 - Defamation (Slander)

68. TOP realleges all paragraphs that precede count 1 as if fully restated.

69. Chase has made oral false statements about TOP to third parties, including, without limitation, falsely stating that TOP is subject to "sanctions" and an "OFAC investigation" together with other false allegations of purported criminal activity. Chase and its agents have also published and republished such false information internally and to third parties.

70. Chase made the false statements with knowledge or reckless disregard as to their falsity, or at the very least Chase made the false statements negligently, because Chase knew and confirmed that TOP was not subject to an OFAC investigation or on any OFAC sanctions list before making those false and defamatory statements to banks or other people involved with or doing business with TOP.

71. Chase also knew the defamatory statements were false when it made them because Chase intentionally set up its communications department for interdiction list cancellations to communicate that the transactions are cancelled "due to sanctions" and an "OFAC investigation" when that is never the case.

72. Chase's false statements are defamatory *per se*, have significantly interfered with TOP's proper exercise of its lawful business, and have caused substantial harm to TOP's relationships with its customers. The false statements also tend to injure TOP in its trade and profession.

73. As a direct and proximate result of Chase's defamatory statements, TOP has suffered substantial damage, including its inability to complete its wire to Delta Star which has put

TOP at risk of losing its contract with Delta Star and the TOP-SLAC Contract.

74. Chase's misconduct, as described herein, was willful, wanton, and malicious. If such misconduct were permitted without rebuke it would encourage others to engage in such willful misconduct.

**WHEREFORE**, TOP respectfully demands judgment against TOP for (1) special and general damages, (2) punitive damages, (3) court costs, (4) pre- and post-judgment interest, and (5) any other relief that the Court deems just and proper.

### Count 5 - Defamation by Implication (Libel)

75. TOP realleges all paragraphs that precede count 1 as if fully restated.

76. Chase published information about TOP to its customers, business associates, lenders, and banks, by juxtaposing or conveying incomplete information or omitting facts so as to imply a defamatory connection between TOP and the OFAC sanctions list, and thereby, falsely impled that TOP was subject to sanctions and related investigations.

77. Chase made the false statements, in writing and with malice and actual knowledge about their falsity because Chase confirmed that TOP's wires and transactions were not denied because of any OFAC or other sanctions concerns and because Chase knew that every time it makes the statement it is false, as no OFAC investigation is underway.

78. Chase's false statements are defamatory *per se*, have significantly interfered with TOP's proper exercise of its lawful business, and have caused substantial harm to TOP's relationships with its customers, business associates, lender, and banks. The false statements also tend to injure TOP in its trade and profession and accuse TOP of the worst crimes.

79. As a direct and proximate result of Chase's defamatory statements, TOP has suffered substantial damage, including its inability to complete its wire to Delta Star which has put TOP at risk of losing its contract with Delta Star and the TOP-SLAC Contract.

80. Chase's misconduct, as described herein, was willful, wanton, and malicious. If such misconduct were permitted without rebuke it would encourage others to engage in such willful misconduct.

**WHEREFORE**, TOP respectfully demands judgment against Chase for (1) special and general damages, (2) punitive damages, (3) court costs, (4) pre- and post-judgment interest, and (5) any other relief that the Court deems just and proper.

### Count 6 - Defamation by Implication (Slander)

81. TOP realleges all paragraphs that precede count 1 as if fully restated.

82. Chase published information about TOP to its customers, business associates, lenders, and banks, by juxtaposing or conveying incomplete information or omitting facts so as to imply a defamatory connection between TOP and the OFAC sanctions list, and thereby, falsely implied that TOP was subject to sanctions and related investigations.

83. Chase made the false statements orally and with malice and actual knowledge about their falsity because Chase confirmed that TOP's wires and transactions were not denied because of any OFAC or other sanctions concerns and because Chase knew that every time it makes the statement it is false, as no OFAC investigation is occurring either.

84. Chase's false statements are defamatory *per se*, have significantly interfered with TOP's proper exercise of its lawful business, and have caused substantial harm to TOP's relationships with its customers, business associates, lender, and banks. The false statements also tend to injure TOP in its trade and profession and accuse TOP of the worst crimes.

85. As a direct and proximate result of Chase's defamatory statements, TOP has suffered substantial damage, including its inability to complete its wire to Delta Star which has put TOP at risk of losing its contract with Delta Star and the TOP-SLAC Contract.

86. Chase's misconduct, as described herein, was willful, wanton, and malicious. If

13

such misconduct were permitted without rebuke it would encourage others to engage in such willful misconduct.

**WHEREFORE**, TOP respectfully demands judgment against Chase for (1) special and general damages, (2) punitive damages, (3) court costs, (4) pre- and post-judgment interest, and (5) any other relief that the Court deems just and proper.

### Count 7 - Violation of New York General Business Law Section 349

87. TOP realleges all paragraphs that precede count 1 as if fully restated.

88. Under New York General Business Law section 349, "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." N.Y. Gen. Bus. Law § 349(a).

89. This section further provides: "any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions." *Id.*(h).

90. Chase conducts business in the state of New York.

91. Chase deceptively cancelled TOP's wire to Delta Star's New York account for politically motivated reasons that have no basis in fact.

92. Chase has rejected wires from TOP and any other companies associated with Jacob or David Gitman since 2019 when it placed them on its AML interdiction list.

93. Chase engages in similar conduct to other politically disfavored individuals and businesses, including, for example, General Michael Flynn Jr. and the National Committee for Religious Freedom. https://nypost.com/2025/03/10/opinion/i-was-debanked-by-jpmorgan-chase-but-fought-back-and-won/.

94. Chase's practices are based on its targeting of disfavored customers targeted for

14

their conservative or religious political views or associations.

95. As a direct and proximate result of Chase's defamatory statements, TOP has suffered substantial damage, including its inability to complete its wire to Delta Star which has put TOP at risk of losing its contract with Delta Star, the TOP-SLAC Contract, and future contracts with SLAC.

96. Under section 349 of New York General Business Law, TOP may seek actual damages and injunctive relief. N.Y. Gen. Bus. Law § 349(h).

**WHEREFORE**, TOP respectfully demands judgment against Chase for temporary and permanent injunctive relief, including ordering Chase to (1) no longer reject wires to or from TOP, (2) no longer debank customers based on their religious or political views, and (3) no longer reject wires to or from individuals or businesses based on their religious or political views. TOP further demands actual damages for the harm suffered from Chase's deceptive practices and any other and further relief the Court deems just and proper.

### Count 8 – Violation of Florida Deceptive and Unfair Trade Practices Act

97. TOP realleges all paragraphs that precede count 1 as if fully restated.

98. Section 655.0323(2), Florida Statutes, provides:

> It is an unsafe and unsound practice for a financial institution to deny, cancel, suspend, or terminate its services to a person, or to otherwise discriminate against a person in making available such services, or in the terms or conditions of such services, on the basis of:
>
> (a) The person's political opinions, speech, or affiliations;
> . . .

99. Subsection (7) provides that "a failure to comply with subsection (1) or engaging in a practice described in subsection (2) constitutes a violation of the Florida Deceptive and Unfair Trade Practices Act under part II of chapter 501." Fla. Stat. § 655.323(7).

100. Section 501.211, Florida Statutes, provides for a private right of action for violations of Florida's Unfair and Deceptive Trade Practices Act, §§ 501.201–213, Fla. Stat., to obtain declaratory judgment, injunctive relief, and damages. § 501.211(1), (2), Fla. Stat.

101. TOP is domiciled in Florida and suffered harm from Chase's actions in Florida. Chase's actions are therefore subject to Florida law.

102. Chase deceptively cancelled TOP's wire to Delta Star's New York account for politically discriminatory reasons that have no basis in fact.

103. Chase has rejected wires from TOP and any other companies associated with Jacob or David Gitman since 2019 when it placed them on its AML interdiction list.

104. Chase targeted TOP due to its perceived, disfavored political speech and affiliations.

105. Chase engages in similar conduct to other politically disfavored individuals and businesses, including, for example, General Michael Flynn Jr. and the National Committee for Religious Freedom. https://nypost.com/2025/03/10/opinion/i-was-debanked-by-jpmorgan-chase-but-fought-back-and-won/.

106. Chase's practices are based on its targeting of disfavored customers targeted for their conservative or religious political views or associations.

107. As a direct and proximate result of Chase's actions, TOP has suffered substantial damage, including its inability to complete its wire to Delta Star which has put TOP at risk of losing its contract with Delta Star, the TOP-SLAC Contract, and future contracts with SLAC.

108. Under sections 501.211 and 655.0323, Florida Statutes, TOP may seek declaratory judgment, injunctive relief, actual damages, and attorneys' fees and costs.

**WHEREFORE**, TOP respectfully demands judgment against Chase, including (1)

declaring that Chase's targeting of TOP and other politically disfavored individuals and customers is illegal under Florida law, (2) ordering Chase to (i) no longer reject wires to or from TOP, (ii) no longer debank customers based on their religious or political views, and (iii) no longer reject wires to or from individuals or businesses based on their religious or political views. TOP further demands actual damages and attorneys' fees and costs for the harm suffered from Chase's deceptive practices and any other and further relief as this Court deems just and proper.

### Count 9 – Violation of California Unfair Competition Law

109. TOP realleges all paragraphs that precede count 1 as if fully restated.

110. Section 17200 *et seq.* of the California Business and Professions Code (the "**UCL**") provides injunctive relief for "unfair competition," which means "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . ." Cal. Bus. & Professions Code § 17200.

111. As a result of Chase's cancellation of TOP's wire to Delta Star, TOP will not be able to deliver to SLAC the transformer it ordered under the TOP-SLAC Contract.

112. SLAC is based in California. Chase's actions have therefore caused harm in California and are subject to California's UCL.

113. Chase unfairly cancelled the wire sent from TOP to Delta Star based on politically motivated reasons that have no basis in fact.

114. Chase has cancelled wires from TOP and any other companies associated with Jacob or David Gitman since 2019 when it placed them on its AML interdiction list.

115. Chase engages in similar conduct to other politically disfavored individuals and businesses, including, for example, General Michael Flynn Jr. and the National Committee for Religious Freedom. https://nypost.com/2025/03/10/opinion/i-was-debanked-by-jpmorgan-chase-but-fought-back-and-won/.

116. Chase's practices are based on its targeting of disfavored customers targeted for their conservative or religious political views or associations.

117. As a direct and proximate result of Chase's actions, TOP has suffered substantial damage, including its inability to complete its wire to Delta Star, which has put TOP at risk of losing its contract with Delta Star, the TOP-SLAC Contract, and future contracts with SLAC.

118. Under California's UCL, TOP may seek injunctive relief. Cal. Bus. & Professions Code §§ 17203, 17204.

**WHEREFORE**, TOP respectfully demands judgment against Chase for temporary and permanent injunctive relief, including ordering Chase to (1) no longer reject wires to or from TOP, (2) no longer debank customers based on their religious or political views, (3) no longer reject wires to or from individuals and businesses based on their religious or political views, and (4) any other and further relief as this Court deems just and proper.

### Jury Demand

119. TOP demands a trial by jury on all counts so triable.

Date: March 27, 2025

Respectfully submitted,

By: /s/ *David. I. Rosenblatt, Esq.*
**STOK KON + BRAVERMAN**
1 East Broward Blvd, Suite 915
Fort Lauderdale, FL 33301
Tel.: (954) 237-1777
Fax: (954) 237-1737
Email: service@stoklaw.com

David I. Rosenblatt, Esq.
N.Y. Bar No. 4992194
drosenblatt@stoklaw.com
Joshua R. Kon, Esq.
(*pro hac vice* application to be filed)
jkon@stoklaw.com
Yosef Kudan, Esq.

(*pro hac vice* application to be filed)
ykudan@stoklaw.com
Theodore (Tuvia) Sandler, Esq.
(*pro hac vice* application to be filed)
tsandler@stoklaw.com

*Counsel to Plaintiff Top Office Pros Business Services, Inc.*