```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  9/29/2025
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TOP OFFICE PROS BUSINESS SERVICES, INC.,

                Plaintiff,

    -v-

JPMORGAN CHASE BANK N.A.,

                Defendant.

**OPINION AND ORDER**

25-CV-2544 (GHW) (HJR)

**HENRY J. RICARDO, United States Magistrate Judge.**

Plaintiff Top Office Pros Business Services, Inc. ("Top Office") filed this action against Defendant JPMorgan Chase Bank N.A. ("Chase"). Chase has moved to transfer the case to the Southern District of Florida because there is a similar, earlier-filed action pending there. For the reasons set forth below, this action is transferred to the United States District Court for the Southern District of Florida.[1]

## I. BACKGROUND

### A. Factual Background

#### 1. The Instant Action

Top Office is a Florida corporation with its principal place of business in Florida. Complaint, ECF No. 1 ("Compl.") ¶ 1. Jacob Gitman is the president of

---

[1] Because a motion to transfer venue is non-dispositive, the undersigned, to whom Judge Woods referred the case for general pretrial supervision including non-dispositive pre-trial motions, ECF No. 6, addresses this motion by opinion and order under 28 U.S.C. § 636(b)(1)(A), as opposed to by report and recommendation. *See, e.g., RBG Mgmt. Corp. v. Vill. Super Mkt., Inc.*, No. 22-CV-7996, 2024 WL 50239, at *1 n.1 (S.D.N.Y. Jan. 4, 2024), *objections overruled*, 2024 WL 1574026 (S.D.N.Y. Apr. 11, 2024); *Adams v. Barnhart,* No. 03-CV-1362, 2003 WL 21912543, at *1 (S.D.N.Y. Aug. 8, 2003).

1

Top Office, *id.* ¶ 6, and Sinai Holdings, LLC ("Sinai") is one of its corporate officers.[2] *Id.* ¶ 7. Chase is a national bank that is alleged to have its principal place of business in New York. *Id.* ¶ 2. Chase claims its main office is in Ohio. *See* ECF No. 11 at 13.

Top Office is in the business of procuring and selling office and electrical equipment. Compl. ¶ 5. On or around December 17, 2024, Top Office entered an agreement with SLAC National Accelerator Laboratory for the sale of over $11 million in electrical equipment, including two transformers. *Id.* ¶¶ 8, 11. Under this contract, Top Office must deliver the first transformer by July 2027. *Id.* ¶ 12. To meet that deadline, Top Office contracted with Delta Star to manufacture the transformer. *Id.* ¶ 16.

On or around March 11, 2025, Top Office initiated a wire transfer from its Citibank account to Delta Star's account at Chase. *Id.* ¶¶ 18–20. Chase refused to process that transfer and sent a rejection notice stating, "SANCTIONS AND/OR//INTERNAJPMC [*sic*] POLICY." *Id.* ¶¶ 21–22. Top Office was therefore unable to pay Delta Star by wire transfer to its Chase account. *Id.* ¶ 23. Top Office later paid Delta Star by other means. Tr. of 5/8/25 Conf., ECF No. 34 at 14:19–15:21.

Top Office alleges that this was not the first time Chase rejected wires from companies associated with Jacob Gitman and his son, David Gitman. Top Office

---

[2] The Complaint does not explain how a limited liability company can serve as an officer of a corporation. This is typically the job of a natural person.

2

became aware of this problem through discovery in two cases filed in the Southern District of Florida by Monarch Air Group, LLC ("Monarch") and Sinai. Compl. ¶ 24. Based on information learned in these other cases, Top Office alleges that Chase placed Jacob Gitman and his companies on an interdiction list because it concluded that they were associated with Russian organized crime and participated in funding interference in the 2016 United States presidential election. *Id.* ¶¶ 24–25. Top Office insists this is wholly unsubstantiated and false. *Id.* ¶ 25.

Top Office alleges that Chase's internal policy provides that any transaction to or from someone on its internal interdiction list must be cancelled with a notice informing the parties to the transaction that the rejection was "due to Sanctions and/or internal JPMC policy." *Id.* ¶ 36. According to Top Office, Chase generates this notice despite knowing it is false in that Chase actually rejects such transfers due to its own internal policy and not because of any sanctions. *Id.* ¶¶ 35–36.

Top Office claims that Chase's rejection of wire transfers interferes with its ability to conduct business with subcontractors holding accounts at Chase, and that the rejection notices harm the Gitmans and their related businesses by creating a false impression of criminal activity. *Id.* ¶¶ 40–48.

In this action, Top Office brings claims for a declaratory judgment, tortious interference with contract, defamation, violation of New York General Business Law Section 349, violation of Florida Deceptive and Unfair Trade Practices Act Section 655.0323(2), and violation of California Unfair Competition Law Sections 17200 *et seq.* *Id.* at 7–18. It seeks damages, a declaratory judgment that Chase's

3

statements with respect to Top Office and companies associated with Jacob Gitman are false, and an injunction against future statements including the words "OFAC" or "sanctions" with respect to Top Office and companies associated with Jacob Gitman. *Id.* at 7–18.

### 2. The Florida Actions

Monarch is the plaintiff in a suit filed in the Southern District of Florida, *Monarch Air Grp. LLC v. JPMorgan Chase Bank, N.A.*, No. 21-CV-62429-WPD (S.D. Fla.) (the "Monarch Action"). Monarch is a Florida-headquartered entity owned and operated by Jacob Gitman's son, David Gitman. *Monarch Air Grp. LLC v. JPMorgan Chase Bank N.A.*, No. 21-CV-62429, 2023 WL 4363816, at *1 (S.D. Fla. May 12, 2023). This case resulted in summary judgment in Chase's favor.

Sinai is the plaintiff in another suit filed in the Southern District of Florida, *Sinai Holdings LLC v. JPMorgan Chase Bank, N.A.*, No. 23-CV-62159-WPD (S.D. Fla.) (the "Sinai Action"). Sinai is a Florida-headquartered company owned and operated by Jacob Gitman. *Sinai Holdings*, No. 23-CV-62159, ECF No. 44 ("Sinai Am. Compl.") ¶ 22. Sinai seeks damages, declaratory and injunctive relief, including an order that Chase not include the terms "OFAC" and/or "sanctions" in messages related to Sinai and that Chase process payments made to or from Sinai. *Id.* at 19.

Both cases in Florida allege that Chase transmitted messages advising that it would not process wire transfers "due to Sanctions and/or internal JPMC policy." *See Monarch Air Grp.*, 2023 WL 4363816, at *1; Sinai Am. Compl. ¶ 22.

4

### B. Procedural History

Top Office commenced this action on March 27, 2025. *See* Compl. On April 14, 2025, Chase filed the instant motion to transfer this case to the Southern District of Florida, ECF No. 10, along with the supporting memorandum of law, ECF No. 11, and declaration of Eliot Pedrosa. ECF No. 12. Chase also moved for an extension of time to answer the complaint until 21 days after the resolution of the instant motion, which the Court granted by Order dated April 16, 2025. ECF No. 17. Top Office filed its memorandum of law in opposition to the motion to transfer on May 5, 2025, ECF No. 24, and Chase filed its reply on May 12, 2025. ECF No. 33.

## II. DISCUSSION

Chase moves to transfer this action to the Southern District of Florida under the first-filed rule or, in the alternative, pursuant to 28 U.S.C. § 1404(a). Because the Court finds that transfer of this action is warranted under the first-filed rule, it does not separately analyze Section 1404(a).

### A. The First-Filed Rule Applies

"Under the first-filed doctrine, when competing lawsuits have been filed in different courts relating to the same controversy, ordinarily, 'the first suit should have priority,' and the later-filed suit should be dismissed." *Oleg Cassini, Inc. v. Serta, Inc.*, No. 11-CV-8751, 2012 WL 844284, at *3 (S.D.N.Y. Mar. 13, 2012) (quoting *D.H. Blair & Co. v. Gottdiener,* 462 F.3d 95, 106 (2d Cir. 2006)); *see also Dornoch Ltd. ex rel. Underwriting Members of Lloyd's Syndicate 1209 v. PBM Holdings, Inc.*, 666 F. Supp. 2d 366, 369 (S.D.N.Y. 2009). The rule exists to foster

5

judicial economy by avoiding duplicative litigation, and to protect parties from having to litigate the same issue in multiple venues. *See Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000); *Byron v. Genovese Drug Stores, Inc.*, No. 10-CV-3313, 2011 WL 4962499, at *2 (E.D.N.Y. Oct. 14, 2011).

"For the rule to apply, the claims, parties, and available relief must not significantly differ between the actions." *Serta, Inc.*, 2012 WL 844284, at *3 (cleaned up). The issues, however, do not need to be identical, nor do the named parties need to be entirely the same so long as they represent the same interests. *Id.*; *see also Pippins v. KPMG LLP*, No. 11-CV-377, 2011 WL 1143010, at *2 (S.D.N.Y. Mar. 21, 2011) ("The rule does not require that the claims present the exact issue, only that the cases be related.").

The Second Circuit has "recognized only two exceptions to the first-filed rule: (1) where the balance of convenience favors the second-filed action, and (2) where special circumstances warrant giving priority to the second suit." *Emps. Ins. of Wausau v. Fox Ent. Grp., Inc.*, 522 F.3d 271, 275 (2d Cir. 2008) (cleaned up).

### 1. This New York Action Involves Similar Parties and the Same Interests as the Sinai Action

"Where essentially the same lawsuit involving the same parties and the same issues is pending in two different federal courts, the first-filed rule creates a presumption that the case filed earliest will take priority." *Emp. Ins. of Wausau v. Fox Ent. Grp., Inc.*, 522 F.3d 271, 274 (2d Cir. 2008) (cleaned up). The first-filed rule also applies when the Court finds that two actions involve substantially similar parties and issues. *See, e.g., In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 116–17 (2d

Cir. 1992); *see also Serta, Inc.*, 2012 WL 844284, at *3 ("[T]he issues need not be identical, and the named parties need not be entirely the same provided that they represent the same interests."). Parties represent the same interests when there is substantial overlap between them. *See, e.g.*, *Serta. Inc.*, 2012 WL 844284, at *4 (finding that parties represent the same interests because, even though all parties were not named in the first-filed action, either lawsuit would resolve the parties' interests because the parties were related through their product offerings).

This case and the Sinai Action have similar parties. Chase is the only defendant in both cases. The plaintiffs in both cases include companies owned and operated by Jacob Gitman. Here, the plaintiff is Top Office, a company led by Jacob Gitman and owned in part by Sinai. Compl. ¶¶ 6–7; ECF No. 4. Both Jacob Gitman and Sinai are plaintiffs in the Sinai Action, and Sinai itself is a company owned and operated by Jacob Gitman. Sinai Am. Compl. ¶ 22.[3]

Top Office argues in opposition that it "is a separate legal entity" from the plaintiffs in the Sinai Action. ECF No. 24 ¶ 3. While true, these plaintiffs are closely related: Sinai is a "corporate officer" of Top Office, Compl. ¶ 7, and Sinai owns 25% of Top Office's shares. ECF No. 4. Further, both Top Office and Sinai are companies owned and/or led by Jacob Gitman. Compl. ¶ 6; Sinai Am. Compl. ¶ 22. Top Office does not identify any individual other than Jacob Gitman who is a beneficial owner of Top Office and Sinai.

---

[3] Although it is no longer pending, the Monarch Action was similarly overlapping. The plaintiffs in that case were David Gitman (Jacob Gitman's son) and Monarch (a company owned and operated by David Gitman). *Monarch Air Grp. LLC*, 2023 WL 4363816, at *1.

More importantly, the plaintiffs in this case and in the Sinai Action represent the same interests. Courts in this District have found that parties represent the same interests where, practically, the resolution of either of the lawsuits would resolve those parties' interests. *See Cuebiq Group, LLC v. PaeDae, Inc.*, No. 24-CV-7542, 2025 WL 2419711 (S.D.N.Y. Aug. 21, 2025) (finding similar interests where parties with different ownership have interest in rulings on misappropriation of certain technology); *Oleg Cassini, Inc. v. Serta, Inc.*, No. 11-CV-8751, 2012 WL 844284, at *4 (S.D.N.Y. Mar. 13, 2012) (recognizing same interests where "in practice, either lawsuit [would] resolve those parties' interests").

At its core, this lawsuit challenges a decision made by Chase in 2019–2020 to reject wire transfers from *Jacob Gitman and his companies*, as well as a Chase policy of sending notices that such transfers were blocked due to sanctions, internal bank policy, or OFAC investigations.

> 24. Based on information TOP and its counsel discovered during other litigation previously held in *Monarch Air Group, LLC et al v. JPMorgan Chase Bank, N.A.*, case number 21- cv-62429-WPD (S.D. Fla.) (the "Monarch Case") and in litigation currently pending in *Sinai Holdings, LLC et al. v. JPMorgan Chase Bank, N.A.*, case number 23-cv-62159-WPD (S.D. Fla.) (the "Sinai Case"), Chase's reasons for rejecting wires from TOP is based on its decision in or around 2019–2020 **to interdict Jacob Gitman, his son David Gitman, and companies associated with them**.
>
> 25. **Chase's decision to interdict Jacob Gitman and his companies** was based on its wholly unsubstantiated and false conclusions that **Mr. Gitman and his companies** were associated with Russian organized crime and participated in funding interference in the 2016 U.S. presidential election.

8

Compl. ¶¶ 24–25 (emphasis added). The Complaint alleges that Chase was influenced by a 2019 blog post and a subpoena from Congresswoman Maxine Waters. Compl. ¶¶ 30–32. According to the Complaint, these developments induced Chase to impose a blanket policy having the same impact on the plaintiffs in both cases.

> 32. Based on the blog post's claims and Ms. Waters' missives, **Chase concluded that Mr. Gitman and all companies associated with him** were engaged in money-laundering and had potentially interfered in the 2016 U.S. presidential election.
>
> 33. From that point forward, **Mr. Gitman and any entities associated with him** were interdicted by Chase and transactions to or from them were rejected.
>
> 34. In connection with the rejection of **any wires to or from Mr. Gitman or any of his companies**, Chase issues a rejection notice to the parties to the transaction explaining that the wire was cancelled because **Mr. Gitman and his companies were subject to OFAC investigations, as well as sanctions and/or internal JPMC policy**.
>
> 35. This notice is generated as a matter of policy at Chase knowing it is false; in fact, it is only issued when the reason for Chase's actions are not sanctions related, but stem from internal compliance

Compl. ¶¶ 32–35 (emphasis added).

Thus, the fundamental interests that Top Office seeks to vindicate through this litigation are countering Chase's alleged practices of (1) rejecting payments from Jacob Gitman and his companies and (2) advising transaction participants that these payments were rejected due to OFAC investigations, sanctions, or internal Chase policy. It is clear from the Complaint that these challenged

practices predate Top Office's 2024 and 2025 contracts, are not limited to Top Office, and are broadly directed to Jacob Gitman and any company owned by him, including Top Office and Sinai.

By challenging these Chase practices, Top Office represents the same interests as the plaintiffs in the Sinai Action because they are challenging *the very same Chase practices*:

> 45. For many years, Chase has **rejected, cancelled, and otherwise prevented individuals and businesses from transferring funds**, including via wire and ACH transfer, to or from Plaintiffs.
>
> 46. Chase, through oral, written, and electronic communications, falsely told Plaintiffs' customers, lenders, banks, financial institutions and other business associates that they could not execute a transaction with Sinai and Gitman **"due to Sanctions" concerning a made up "OFAC investigation."**

Sinai Am. Compl. ¶¶ 45–46 (emphasis added).

Because plaintiffs in both cases challenge the same Chase practices, which Top Office repeatedly admits are directed to Jacob Gitman and all his companies—including plaintiffs in both cases—a final judgment in one case will effectively resolve the other case. [4] Accordingly, Top Office represents the same interests in this case that its affiliates, Sinai and Jacob Gitman, represent in the Sinai Action.

### 2. This New York Action Involves Substantially Similar Issues as the Sinai Action

Two actions involve similar issues when there are "sufficient overlapping factual and legal issues" that would be supported by the same evidence. *See*

---

[4] *See also Monarch Air Grp.*, 2023 WL 4363816, at *1.

*MasterCard International, Inc. v. Lexcel Solutions, Inc.,* No. 03-CV-7157, 2004 WL 1368299, at *8 (S.D.N.Y. June 16, 2004). "[T]he issues need not be identical" to be substantially similar. *Oleg Cassini*, 2012 WL 844284, at *3.

Plaintiffs in both actions allege that Chase has an internal policy of sending transaction rejection notices stating these transactions could not be completed "due to Sanctions and/or internal JPMC policy" and mentioning an "OFAC investigation." Compl. ¶¶ 21–22, 36, 59, 63–64, 69–71; Sinai Am. Compl. ¶ 5–7, 37–38, 46, 72–73, 78, 99, 104, 106; *see also Monarch Air Grp.*, 2023 WL 4363816, at *1. Plaintiffs in both cases allege such notices are sent because Chase placed Jacob Gitman and his companies on an internal interdiction list. Compl. ¶¶ 24–25; Sinai Am. Compl. ¶ 4; *see also Monarch Air Grp.*, 2023 WL 4363816, at *1. As a result, these cases both involve the same factual issues regarding Chase's internal policies and the same legal issues regarding whether Chase's alleged actions in accordance with these policies render Chase liable to plaintiffs.

Additionally, the declaratory relief sought in each case is nearly identical. The Complaint in the instant case describes it as follows:

> The Court should further award supplemental relief under 28 U.S.C. § 2202 requiring Chase to tell every person or entity to whom it told that it could not complete a transaction to or from TOP because of "sanctions" that "neither TOP, Jacob Gitman, nor any company associated with Jacob Gitman are subject to any sanctions, including OFAC sanctions or investigations, and that Chase only published the sanctions statements because its policy was made to always publish these false statements," and such other relief that the Court deems just and proper.

Compl. at 8. The complaint in the Sinai Action seeks very similar declaratory relief:

> the Court should award supplemental relief under 28 U.S.C. § 2202 requiring Chase to tell every person or entity to whom it told that it could not complete a transaction to Plaintiffs because of an "OFAC investigation" or "due to sanctions" that "Neither Sinai Holdings, LLC, nor Jacob Gitman are subject to any sanctions, including OFAC sanctions or investigations, and that Chase only said that because their policy was made to always publish these false statements," and such other relief that the Court deems just and proper.

Sinai Am. Compl. at 20.

In opposition to the transfer motion, Top Office argues that this case involves Chase's interference with contracts that are not at issue in the Sinai Action. *See* ECF No. 24 ¶ 3. But Top Office alleges that what triggered Chase's interference with these contracts was Jacob Gitman's ownership of Top Office, not some fact pertaining to Top Office's contracts. Indeed, if the Complaint is to be believed, Chase would block *any* payment from Top Office or *any other* company owned by Jacob Gitman. Thus, the involvement of different contracts in this action is not a significant difference.

Next, Top Office argues that the two cases involve "entirely different causes of action." ECF No. 24 ¶ 5. In fact, both cases assert causes of action for tortious interference, defamation (libel), defamation (slander), defamation by implication (libel) based on the same standardized transaction rejection statements. The only difference in the causes of action asserted are that, in additional to the claims common to both suits, this New York suit asserts claims under several state

12

consumer protection statutes. But the underlying conduct said to violate these statutes is the same Chase policies that are at issue in the Sinai Action.[5]

Further, there are serious questions as to whether Top Office's statutory claims are viable. Section 349 of the New York General Business Law applies to deceptive acts and practices that are *consumer-oriented*, which is not the nature of the deceptive practices alleged here. *See Benetech, Inc. v. Omni Fin. Group, Inc.*, 116 A.D.3d 1190 (3d Dep't 2014) (defining "consumers" as "those who purchase goods and services for personal, family, or household use"). The California Unfair Competition Law does not have extraterritorial application, and there do not appear to be allegations that violations occurred in California. *See Collection, LLC v. Wewhorewhat, LLC*, Nos. 20-CV-8623 and 21-CV-1623, 2021 WL 4942625 (S.D.N.Y. Oct. 22, 2021) ("To state a claim under the UCL, 'plaintiffs who are not California residents must . . . allege facts to show that the alleged violations occurred within California, because California's unfair competition law does not apply extraterritorially.'" (quoting *Aghaji v. Bank of Am., N.A.*, 247 Cal. App. 4th 1110, 1119 (2016))). Finally, it appears that the Florida statute that creates a right of action, Fla. Stat. § 501.211, does not apply to federally regulated banks, such as Chase. *See* Fla. Stat. § 501.212(4)(c).

---

[5] In support of this argument, Top Office cites a decision that is inapposite. *See* ECF No. 24 ¶ 7 (citing *Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 551 (S.D.N.Y. 2016)). That decision declined to apply the first-filed rule where there were two consumer class action suits involving entirely different consumers who were protected by different laws because they lived in different states. In contrast, the plaintiffs in the two cases at issue here are affiliates operating in Florida.

While there are differences between the two cases, the core legal and factual issues that they raise are substantially similar and the differences are less important in that they are symptoms of a common problem.

### 3. The Special Circumstances Exception Does Not Apply

"Special circumstances are present when the first suit was filed as a result of forum shopping or when the first suit was a result of 'anticipatory filing.'" *Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 390 (S.D.N.Y. 2014) (quoting *Schnabel v. Ramsey Quantitative Sys., Inc.*, 322 F. Supp. 2d 505, 511 (S.D.N.Y. 2004)). "An improper anticipatory filing is 'one made under the apparent threat of a presumed adversary filing the mirror image of that suit' in another court." *Pharm. Res., Inc. v. Alpharma USPD Inc.*, No. 02-CV-1015, 2002 WL 987299, at *3 (S.D.N.Y. May 13, 2002) (quoting *Ontel Prods., Inc. v. Project Strategies Corp.*, 899 F. Supp 1144, 1150 (S.D.N.Y. 1995)). To find a special circumstances exception based on forum shopping, "the first-filing plaintiff must engage in some manipulative or deceptive behavior, or the ties between the litigation and the first forum must be so tenuous or de minimis that a full 'balance of convenience' analysis would not be necessary to determine that the second forum is more appropriate than the first." *Emps. Ins. of Wausau*, 522 F.3d at 276.

There are no such special circumstances here. No one has suggested that the plaintiffs in the first-filed Sinai Action engaged in deceptive or manipulative behavior by filing in Florida. If anything, Chase alleges it was manipulative to file this subsequent case in New York, supposedly to escape a judge in Florida who is

14

familiar with plaintiff's allegations. Thus, the "special circumstances" exception to the first-filed rule is inapplicable.

### 4. The Balance of Convenience Does Not Overcome the First-Filed Rule

Because the special circumstances exception does not apply, it is necessary to analyze whether the balance of convenience overcomes the first-filed rule. *Emps. Ins. of Wausau*, 522 F.3d at 276 ("Where special circumstances are not present, a balancing of the conveniences is necessary."). The relevant considerations for the balance of convenience analysis "are essentially the same as those considered in connection with motions to transfer venue pursuant to 28 U.S.C. [Section] 1404(a)."[6] *Id.* at 275. The relevant factors include:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties.

*Id.* "There is no rigid formula for balancing these factors and no single one of them is determinative." *Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49, 57 (S.D.N.Y. 2001). "Balancing factors of convenience is essentially an equitable task. For that reason, an 'ample degree of discretion' is afforded to the district courts in determining a suitable forum." *First City Nat. Bank & Tr. Co. v. Simmons*, 878 F.2d 76, 80 (2d Cir. 1989).

---

[6] Given this similarity, it would be duplicative to discuss Section 1404(a) separately.

15

First, "[t]he Second Circuit has consistently held that 'a plaintiff's choice of forum is presumptively entitled to substantial deference.'" *Atl. Recording,* 603 F. Supp. 2d 690, 698 (S.D.N.Y. 2009) (quoting *Gross v. BBC,* 386 F.3d 224, 230 (2d Cir. 2004)). However, that deference is reduced where, as here, the plaintiff's choice of forum is not its principal place of business. *AIG Fin. Prods. Corp. v. Pub. Util. Dist. No. 1 of Snohomish Cnty., Wash.*, 675 F. Supp. 2d 354, 368 (S.D.N.Y. 2009). Top Office is neither organized in New York nor does it have its principal place of business in New York. Rather, its principal place of business is in Florida, where the first-filed action is pending, and its choice to bring this action in this district is therefore afforded less weight. Further, where, as here, there is no improper anticipatory filing, "the plaintiff in the first-filed action[ ] is afforded the choice of forum." *Cuebiq Group, LLC*, 2025 WL 2419711, at *7. This factor does not weigh against transfer to Florida.

Second, the convenience of the witnesses, also does not weigh against transfer to Florida. "[T]he convenience of witnesses [is] the single most important factor in the balance [of conveniences]." *Pilates, Inc. v. Pilates Inst., Inc.*, 891 F. Supp. 175, 183 (S.D.N.Y. 1995). "When assessing the convenience of witnesses, . . . the court must qualitatively evaluate the materiality of the testimony that the witnesses may provide." *Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F. Supp. 2d 282, 286 (S.D.N.Y. 2004).

Top Office is based in Florida. While Top Office claims that the primary witnesses will be Chase employees who are likely located in New York, it does not

16

identify any particular witnesses or describe what testimony they would provide. This failure to identify any Chase witnesses regarding its treatment of Jacob Gitman and his companies is particularly glaring given that persons affiliated with Top Office, represented by the same counsel, have litigated two other actions involving the same alleged practices. Accordingly, Top Office fails to show that this factor weighs against transfer.

Third, the Court considers the location of relevant documents and finds this factor is neutral. Top Office argues that documents relevant to the Delta Star wire are most likely located in New York because Chase is located here. ECF No. 24 ¶ 9. But Top Office does not provide any detail about these documents or make a showing regarding any burden it would face if this action were transferred to the Southern District of Florida. *See Starr Indem. & Liab. Co. v. Brightstar Corp.*, 324 F. Supp. 3d 421, 441 (S.D.N.Y. 2018) (holding that the location of documents is afforded little weight absent "a detailed showing of the burden" of litigating in a particular forum); *Transatlantic Reinsurance Co. v. Cont'l Ins. Co.*, No. 03-CV-227, 2003 WL 22743829, at *5 (S.D.N.Y. Nov. 20, 2003) ("The location of records is not a compelling consideration when records are easily portable.").

Fourth, the Court considers the convenience of the parties and finds that this factor is neutral. Top Office is located in Florida and Chase is presumably located in New York. However, Chase has litigated two similar actions in Florida since 2021 and is the party seeking transfer to Florida. The fact that Chase, the party

17

that would more likely be inconvenienced by a Florida forum, nonetheless seeks to transfer this action suggests that convenience does not favor New York.

Fifth, the Court considers the locus of operative facts and finds this factor is neutral. The claims arise from Chase's use of a notice that a banking transaction could not be processed. This appears to be an automated, electronic notice, and Top Office has not shown that these notices are processed in or sent from a Chase location in New York. Despite two other litigations filed by its affiliates, Top Office has not shown that New York was where Chase made decisions about how it should handle payments from Jacob Gitman and his companies.

Sixth, Top Office does not show "persuasively that compulsory service of process for third party witnesses is likely to be more problematic in either forum," so this factor is neutral. *Everest Cap. Ltd. v. Everest Funds Mgmt., L.L.C.*, 178 F. Supp. 2d 459, 467 (S.D.N.Y. 2002). Top Office has not identified any witnesses who will be unwilling to appear in Florida. *See, e.g., Transatlantic Reinsurance Co*, 2003 WL 22743829, at *5 (finding that the availability of process to compel attendance of unwilling witnesses is neutral because the plaintiff did not make a showing or suggestion that relevant witnesses would be unwilling to appear).

Finally, the Court considers the relevant means of the parties, which "has rarely been a dispositive reason to grant or deny a transfer motion; it is just one more factor to consider," and the Court finds that this factor is neutral. *Thomas Am. Corp. v. Fitzgerald*, No. 94-CV-262, 1994 WL 440935, at *5 (S.D.N.Y. Aug. 11,

18

1994). Neither party seems to be without resources to pursue this litigation, and Chase has been litigating with parties related to Top Office in Florida since 2021.

For the foregoing reasons, the Court finds that the balance of convenience exception does not displace the first-filed rule.

### B. Transfer of this Action Is Warranted

"Where the first-filed rule applies, a court may dismiss the second-filed case, transfer it to the first-filed district, or stay the second case pending resolution of the first-filed case." *Santana v. Cavalry Portfolio Servs., LLC*, No. 19-CV-3773, 2019 WL 6173672, at *5 (S.D.N.Y. Nov. 19, 2019). "In determining which remedy is proper, a court must consider the goals of the doctrine—to 'avoid duplication of judicial effort . . . and eliminate the risk of inconsistent adjudication.'" *Id.* (quoting *Regions Bank v. Wieder & Mastroianni, P.C.*, 170 F. Supp. 2d 436, 439 (S.D.N.Y. 2001)).

Chase requests only that the Court transfer this action to the Southern District of Florida. ECF No. 11 at 17. And Top Office only asks this Court to deny the motion to transfer so that it can litigate this action in this district. ECF No. 24 at 6. Neither party proposes any alternative remedy.

The Court finds that transfer will meet the goals of the first-filed rule by avoiding inconsistent results, promoting judicial efficiency, and allowing the parties to litigate in one place. *See Santana v. Calvary Portfolio Servs., LLC*, No. 19-CV-3773, 2019 WL 6173672, at *6 (S.D.N.Y. Nov. 19, 2019) ("[T]he doctrine's goals [include] achieving fairness and comprehensive disposition of litigation while

avoiding inconsistent adjudications and duplication of judicial effort and other inefficiencies.").

### III. CONCLUSION

For the reasons set forth above, the motion to transfer at ECF No. 10 is **GRANTED** and the Clerk of Court is respectfully directed to terminate it as such. The Clerk of Court is further directed to transfer this case to the U.S. District Court for the Southern District of Florida administratively close the docket in this District upon the expiration of seven days after the date of this Order (*i.e.*, October 6, 2025), pursuant to Local Civil Rule 83.1.

**SO ORDERED.**

Dated: September 29, 2025
      New York, New York

Henry J. Ricardo
United States Magistrate Judge